JENNIE R. ADRAIN et al., executors, &c.,

*v.*

JEAN LIVINGSTON KOCH et al.

[Submitted May 1st, 1914.   Decided June 4th, 1914.]

1. Where the language of a will can be read in its ordinary and natural sense, no construction is necessary, but, where it cannot be so read, it must be interpreted as a whole to make it speak, and speak intelligibly, the intention of the testator.

2. Testator, who left him surviving a widow, two daughters, their children, and the children of a deceased son, including a daughter of one of testator's daughters, who had been legally adopted by testator as a child, her son by her first husband, and an infant son by her second marriage, bequeathed the income of the residuary estate to his wife for life, and after her death gave the residue in trust to executors to pay over the income thereof unto "my children living at the death of my said wife," and the issue of any deceased child who might have died leaving issue her surviving, *per stirpes* and not *per capita,* until his youngest grandchild living at testator's death reached twenty-one years or died, and then the residue over to his children, living at the death of his wife, and to the issue of any deceased child leaving issue surviving, and gave each of his children a legacy of $12,000, and the income of a trust fund of $160,000 for life, with remainders to their issue and cross-remainders, if there should be no issue, and bequeathed the income of $50,000 for life to the adopted child referred to as "granddaughter," with remainder to her child by her first marriage.—*Held,* that the adopted daughter did not take under the residuary clause as one of the children of the testator living at the death of his wife, as he evidently did not mean that she should take one-fourth of his residuary estate.

3. Under a will providing for the support, maintenance and education of testator's grandchildren, they would be entitled to the interest and income of the money set apart for them from the date of the testator's death.

4. Under a will giving the widow the income from a residuary estate for life and, on her death, the residue to executors in trust for investment and to pay the income over to children and grandchildren until the youngest grandchild reached the age of twenty-one, the income set apart for minor grandchildren was intended to be left in the hands of the trustees, though the custody of such grandchildren might be in, and the expenditures for their benefit might be actually made by, their guardians, respectively.

5. Where a will did not indicate how much of the income from a residuary fund in trust for minor grandchildren ought to be expended annually for their benefit, reference would be made to a master to inquire what amount should be periodically transferred by the trustees to the general guardians for that purpose.

6. The amount to be paid from the income of a trust fund for the maintenance, support and education of minor devisees should be limited to the actual necessities of the situation, and, if there is any surplus, it should be accumulated by the trustees for their benefit until they arrive at the age when they can control their own funds.

---

On final hearing on bill, answer, replication and proofs.

*Mr. John R. Hardin,* for the complainant.

*Mr. Hugh K. Gaston,* for Jennie R. Rowland, guardian, &c.

*Mr. Edward M. Colie, Mr. Alan H. Strong* and *Mr. E. L. Myers* (of the New York bar), for Jean Livingston Koch.

*Mr. Kinsley Twining* and *Mr. Richard V. Lindabury,* for Mrs. Grace R. Riva.

*Mr. Frank P. McDermott,* guardian *ad litem* of the Riva children.

HOWELL, V. C.

This is a bill for the construction of the will of William Rowland, late of Somerset county, who died on July 30th, 1911, leaving a will bearing date December 7th, 1910, which was admitted to probate and on which letters testamentary were issued to the complainants as executors and trustees.

Mr. Rowland left him surviving his widow Jane, his two children Mrs. Adrain and Mrs. Riva; and his grandchildren William, Charles and John, sons of the testator's deceased son William; the two children of his daughter Mrs. Riva and the two children of his daughter Mrs. Adrain; the Adrain children being Robert Adrain, Jr., and Jean Livingston Koch. There were also living at the time of the testator's death William Dorman, who was the son of Jean Livingston Koch by her first hus-

band; also her present husband, and an infant son of her second marriage. These parties were also all *in esse* at the time of the execution of the will in question. The widow died in 1911.

In the early part of 1884 proceedings were taken by the testator and his wife for the adoption by them of Jean Livingston Koch, their granddaughter. These proceedings resulted in a decree made by the orphans court of Somerset county on June 27th, 1884, whereby the adoption by Mr. and Mrs. Rowland of their grandchild as their child was accomplished. I may say at this point that some question was made at the hearing as to the legality of these proceedings. There is no allegation of their invalidity in any of the pleadings. I have examined them with considerable care and find as a matter of law that they are regular in form and in accordance with the statute, and that they therefore cannot be attacked collaterally. The results of these proceedings was embodied in a decree which seems to satisfy all the requirements of the statute and to put the validity of the adoption beyond question.

The widow of the testator was by the terms of the will entitled to the income from the residuary estate for the term of her natural life. Upon the falling in of her life estate the income of the residue became divisible. The trustees being in doubt as to the proper construction of the residuary clause of the will, now lay the same before the court and seek its direction as to the manner in which the distribution shall be made.

The residuary clause of the will provides that upon the death of the widow the residue shall go to the executors upon the trust

"to invest the same and keep the same invested and pay over the semi-annual income thereof unto my children living at the death of my said wife, and the lawful issue of any deceased child of mine who may have died in her life time leaving lawful issue her surviving *per stirpes* and not *per capita*, until such time as my youngest grandchild living at the time of my death shall attain the age of twenty-one years, or until the death of my said youngest grandchild; upon my said youngest grandchild living at the time of my death attaining the age of twenty-one years, or in the event of the death of my said youngest grandchild before he or she attains the age of twenty-one years, then and in that event I give, devise and bequeath my said residuary estate, or so much thereof as shall then remain, unto my children living at the death of my said wife, and the lawful issue of any deceased child of mine who may have died in her life time leaving lawful issue her surviving *per stirpes* and not *per capita*."

Under this clause two questions arise—first, whether Jean Livingston Koch, the adopted child of the testator, takes a share in the residuary fund as one of "my children living at the death of my said wife" by virtue of the decree of adoption, and second, whether the trustees are to administer the income accruing to the minor grandchildren of the testator in pursuance of the terms of the will, or whether such administration devolves upon their general guardian, and likewise whether interest runs on the legacies to the grandchildren from the date of the testator's death.

The remarks of Lord Halsbury in the house of lords in the case of *Inderwick* v. *Tatchell (1903), A. C. 120, 72 L. J. Ch. 393,* apply with peculiar force to this case. He said: "I confess I approach the interpretation of a will with the greatest possible hesitation as to adopting any supposed fixed rule for its construction. If I can read the language of the instrument in its ordinary and natural sense I do not want any rule of construction, and, if I cannot, then I think one must read the whole instrument as well as one can, and conclude what really its effect is intended to be by looking at the instrument as a whole. By the hypothesis it does not speak for itself, but you must arrive at some interpretation which will make it speak and make it speak intelligibly. I go so far with the contention of the appellants here, * * * that if the testator had contemplated the particular event that has happened in this case he would have provided for it; but with that single observation I am not at liberty because an event has happened which I think has not been provided for to conjecture what the testator would have provided if he had thought of it beforehand. I am not at liberty to disregard the application of the ordinary rule of construction of every document, namely, that you must look at the whole document, and, if you can, you must read the words according to their natural and reasonable meaning." A comparison of particular clauses of this will leads only to confusion. Its construction requires a broad general view and a careful reading of the whole instrument in order to determine the meaning of the particular clauses. The general scheme of the whole instrument must be examined and its meaning deter-

mined therefrom and thereby. The general plan of the will so far as relates to descendants of the testator appears to consider them in two classes determined by their nearness in blood to himself. Manifestly these classes are "children" and "grandchildren," using the words in their natural sense and not in the artificial sense that comes from the decree of adoption above referred to. In the first of these classes he puts his two natural daughters, Mrs. Adrain and Mrs. Riva. To those who belong in this class he gives first a money legacy of $12,000; second, he provides for each of them a trust fund of $160,000, giving the income of the fund to them for life, with remainders to their issue, and cross-remainders if there should be no issue. It is significant if the testator at the time of the execution of his will had in mind •the artificial relation which had been created between him and his granddaughter Jean Livingston Koch, that he did not make the same provision for her that he made for his two natural children, and at once the question arises whether the testator intended that his adopted daughter should belong to the class known as his "children," or whether he intended that she should take her natural place in the next ·class. The will seems to answer that question. The second class of beneficiaries includes the seven grandchildren, Mrs. Adrain's two children Robert Adrain, Jr., and Jean L. Koch; William R. Rowland's three children, William, Charles and John.; and the two Riva children, for each of whom he made substantially the same provision. The variations relate only to the Adrain family. Robert Adrain's devise is absolute. Jean Livingston Koch's bequest is for life, with remainder to the child of her first marriage. To his other grandchildren, viz., the children of William R. Rowland and of Mrs. Riva, he makes bequests payable when they shall arrive at the age of thirty years respectively, but with the receipt of the income meantime. This is approximately equal treatment of the class of "grandchildren," and it seems to me to exclude the idea that he had in mind the advancement of Mrs. Koch from the degree of granddaughter to that of child. This appears to be the scheme of the will, and to allow it to be broken in upon would in my opinion be violative of the intention of the testator.

There is in the will one other reference favoring this view. It is contained in the fourteenth clause, wherein he provides for Mrs. Koch. He there gives her the income of $50,000, with remainder to her son William Dorman, and in that connection refers to her twice as his "granddaughter." In my opinion that fact so clearly and aptly expressed almost of itself puts the question at rest. I think it is quite apparent that when the testator gave instructions for the drafting of his will he not only forgot to inform the draftsman of the fact that he had adopted his grandchild, but had likewise dropped it entirely but temporarily from his memory.

There is another consideration which must operate against the claim of Mrs. Koch. If she is to share in the residuary estate as a "child" she will at once become invested with the title to one-fourth of the residuum in her own right, and upon the death of her mother to one-half of the trust fund, the interest on which is payable to the mother for her life; and in another contingency, very remote, perhaps, she might get a share in the trust fund set apart for Mrs. Riva. This I think would be a complete variation from the scheme of the will which Mr. Rowland had in mind, because it would give Mrs. Koch a much larger share in his estate than would be received by any of the others, and there is nothing in the will to indicate that he meant her to enjoy a larger share of his bounty than the others.

The only thing in the will which militates against this view is found in the provision for disposing of the principal of the trust funds of $160,000 each for the benefit of Mrs. Adrain and Mrs. Riva. After the death of Mrs. Adrain and Mrs. Riva respectively the trustees are directed to invest and keep invested the said trust funds of $160,000 and pay over the net semi-annual income thereof to her *children* living at the time of her said daughters respectively. It is quite apparent that upon the death of Mrs. Adrain, Mrs. Riva surviving her, the testator's use of the word "children" would be inapt, because as it has turned out there could be only one child left. But I look upon this rather as a lapse of thought and not as an indication that the testator meant to include Mrs. Koch as a child. It will

be observed that the same phrase is used in the residuary clause. It seems to have been a form of words used by the scrivener rather than evidence of a settled determination on the part of the testator to have Mrs. Koch included as one of his children.

My conclusion therefore is that Mrs. Koch does not take under the residuary clause as one of the children of the testator living at the death of his wife, and that the testator did not mean that she should be a recipient of his bounty to the extent of one-fourth of his residuary estate.

It is quite apparent from reading the will that the testator meant that the provisions made for his grandchildren were made for their support, maintenance and education, in which event they are entitled to the interest and income of the money set apart for them from the date of the death of the testator.

There remains only the question, who shall administer the income from the funds set apart for the minor grandchildren. There is no direction in the will about it, and inasmuch as the will is silent on the subject it would seem as if the management of the fund had been intended to be left in the hands of the trustees, while the management of the minor children and the expenditures for their benefit should be actually made by their general guardians respectively, who have also charge and custody of their persons. This would make it necessary for the trustees to transfer to the general guardians respectively from time to time such funds as may be needed for the support, maintenance and education of these children. The income upon their invested funds ought to be from four to five per cent., producing an income of from $2,000 to $2,500 for each one of them. Inasmuch as there is little or nothing in the case to indicate how much of this fund ought to be expended annually at the present time or in the near future for the benefit of the minors, it will be necessary to refer the matter to a master to inquire what amount should be periodically transferred for the purpose by the trustees to the general guardians. Such an inquiry was made in the case of *McKnight v. Walsh, 24 N. J. Eq. 498.* The principle is in cases of this class that the amount to be paid for the maintenance, support and education of the minors should be limited to the actual necessities of the situation, and if there is any surplus

it should be accumulated by the trustees for the benefit of the *cestuis que trust* until they arrive at the age when they may control their own funds.

There are some discrepant cross-references from one paragraph to another in several places in the will, but inasmuch as counsel have agreed in relation thereto it is unnecessary that any mention should be made thereof at the present time.