## Sternberger's Estate.

Argued November 13, 1935.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Leon J. Obermayer,* of *Edmonds, Obermayer & Rebmann,* with him *J. Warren Brock,* for appellant.

*Bevan A. Pennypacker,* with him *Clement B. Wood,* for appellee.

OPINION BY BALDRIGE, J., January 31, 1936:

The facts involved in this controversy, stated as briefly as may be, are as follows:

Samuel Sternberger died October 25, 1918, leaving a will, wherein he created certain annuities and life estates, with remainders over. His estate was duly administered and the assets were awarded, in 1920, to his trustees for the purposes set forth in his will.

The trustees filed no account from 1920 to March, 1932. The account then filed showed that during the period 1920 to 1932 the trustees charged numerous items, amounting to $17,255.22, against the income, which, it was alleged, should have been charged against the principal. We are not conceding that all these charges were erroneously made, nor is it necessary to determine that fact, as all the parties in interest agreed, under stipulation entered into, that the items totalling that sum should be withdrawn as income credits and applied as principal credits. The balance of income in the trustees' account, as of December 31, 1932, after making these adjustments, was $21,783.53. At the audit

of the trustees' account, no question was raised as to the distribution of this fund. The auditing judge stated, in noting the stipulation transferring the $17,255.22, "These changes in the account may be set forth and adjusted in the schedule of distribution hereinafter ordered." The trustees thereupon prepared a schedule of distribution, wherein they requested that they be authorized to retain the fund of $17,255.22 to meet a deficit in income for 1932. This deficit, amounting to $23,060.25, exclusive of interest and penalties, was due to the fact that the income from premises 328-44 North Broad Street, Philadelphia, was insufficient to pay the taxes assessed thereon and other carrying charges. It was also agreed in the stipulation by all the life tenants and remaindermen that, notwithstanding this deficit, "it is not to the interest of the trust estate to abandon said premises as an asset of the estate at this time."

The life tenants claimed immediate distribution of the $17,255.22, alleging that if the trustees had not improperly charged the items making up that fund to income, that amount would have been properly distributed, currently, from 1920 to 1932. Honorable Charles SINKLER, the auditing judge, originally held that the trustees were not entitled to retain that fund, thus sustaining the position of the life tenants, and ordered a supplemental schedule of distribution. Upon exceptions to this adjudication, the matter was recommitted to the auditing judge for further testimony. As the parties thereafter entered into further stipulation, agreeing upon all the essential facts involved in the controversy, the additional testimony was confined to the status of the real estate. The balance of principal in the hands of the trustees, as shown by the supplemental schedule, was $546,030.61, composed almost entirely of mortgages, real estate, and some non-liquid assets, the total value of which was $584,079.80, less cash due the accountants in the sum of $38,049.19.

Judge SINKLER revoked his former order, approved the schedule of distribution originally presented, and authorized the retention by the trustees of the fund in question. Exceptions to that decree by the life tenants were dismissed by the majority of the judges sitting as a court in banc. From this decree an appeal was taken.

The testator, in his will covering 26 pages of printed record, made numerous provisions for the disposition of his property. Although he authorized his executors and trustees, in the exercise of their discretion, to borrow money on the credit of his estate to make improvements to his property, he did not provide for the establishment of a reserve for contingencies; on the contrary, he expressly directed that the income from the trust should be distributed annually. He apparently did not contemplate that a contingency might arise which would require an accumulation of the income. But, regardless of specific directions for distribution of income at stated periods, the courts have held that trustees may accumulate a surplus from income if prudent management to prevent deficiencies requires it.

In Sinnott's Est., 310 Pa. 463, 466, 469, 165 A. 244, the will provided that after the death of testator's wife, the entire income of his estate should be divided into six parts, and paid monthly to the beneficiaries, and "that under no circumstances of construction of my will shall any accumulation of income take place but that the whole of the income arising from my estate shall be distributed among those entitled thereto under the terms of this my will." The Supreme Court sustained the lower court in holding that, notwithstanding this express instruction, the trustees, within reasonable limits, had the right to retain "a certain amount of surplus income in aid of the judicious management of a trust" to meet contingencies.

We cannot accede to the argument of the appellant that there is a clear contrast in that case to the one at

54

bar, in that, in Sinnott's Estate, the fund consisted of "surplus income," while, here, a reserve was created by the retention of a fund consisting of income, which, but for the mistake of the trustees, would have been distributed in former years to the life tenants. We think the slight variation in the facts is not vital and that the reasoning in the Sinnott case applies to the case at bar. A so-called "surplus" fund has no peculiar significance that substantially differentiates it from a fund accumulated as here. In Sinnott's Estate the current "surplus" fund was intentionally created to meet possible contingencies by withholding income directed to be distributed. The present fund was unintentionally created, but it is now required to meet actual and urgent needs due to changes in economic conditions.

We recognize that ordinarily a life tenant is entitled to payment of current income and any accumulation; but that rule is subject to the provision that such payment does not reduce the intact value of the corpus of the estate: Peterson's Est., 242 Pa. 330, 89 A. 126; Nirdlinger's Est., 290 Pa. 457, 139 A. 200. All the parties have conceded it is to their interest, and have expressly declared it to be their desire, that the property causing the deficit should not be sold.

In the circumstances presented, what is the best course to follow in order to retain the property and pay the deficit, keeping in mind that neither the life tenants nor the remainders should bear a disproportionate burden, and that the corpus of the estate should remain unimpaired?

If the property producing the deficit is not sold, the taxes and carrying charges must be met in some other way. It would seem but equitable that they should be paid from the fund representing income impressed with a primary liability. If the income accumulated had been paid annually, or if it is now distributed to the

life tenants, the trustees would be compelled to encumber or sell part of the property constituting the principal of the estate, as there is no reasonable expectation that the deficit can be paid from income as the 1932 and 1933 income was less than the current expenses. This would result in an impairment of the corpus, which, as we have observed, should be protected if possible. Whether or not it is for the best interests of the estate to distribute or withhold this accumulated income is largely a matter within the discretion of the orphans' court, which we think has been wisely and properly exercised. It would seem to be sound business judgment to use this fund to meet the present indebtedness and prevent the accumulation of interest and penalties. This would not enhance the value of the principal at the expense of the life tenants, but simply insure against depleting the corpus which produces the income.

Judgment of the learned court below is affirmed, at appellant's costs.

Judges CUNNINGHAM and JAMES dissent.