**PENIX et al. v. FIRST NAT. BANK OF PARIS.**

No. 6620.

Court of Civil Appeals of Texas. Texarkana.
June 4, 1953.

Rehearing Denied June 25, 1953.

64

T. D. Wells, Paris, and Glenn E. Woodard, El Paso, for appellant.

O. B. Fisher and Long & Wortham, Paris, for appellee.

LINCOLN, Justice.

This action was brought by the First National Bank of Paris, Texas, independent executor and trustee of the will of Mrs. W. G. (Mollie Bell) Freese, deceased, for a declaratory judgment to determine the rights between the trustee and various beneficiaries and legatees under said will, dated April 1, 1946, and probated by the county court of Lamar County. The appellee was made independent executor and trustee therein without bond. Numerous benefactions are provided for, and the trustee is given control of the entire estate, appraised in excess of $600,000 at the time of the testatrix' death.

This appeal concerns only two matters, the construction of a portion of the 26th item of the will, and the cross-complaint filed by appellants for removal of the trustee.

By the 26th item it was provided that a store building and lot on the east side of the Public Plaza in Paris was devised and bequeathed to the minor Mollie Ann Penix with the express provision "that it shall remain in the hands of the trust department of the First National Bank of Paris and under its control in trust for the said Mollie Ann Penix until she reaches the age of twenty-five years, at which time the said property shall be turned over to her freed from such trust." Except for the complaint for the removal of the trustee, so much of Item 26 just stated is not in question. The controversy now before us challenges the trial court's construction of the concluding sentence of that paragraph, reading: "During the pendency of the trust all net rents and revenues shall be used for her (Mollie Ann's) support, maintenance and schooling." At the time of the trial Mollie Ann was about nine years old, residing in the State of Colorado with her parents, appellants here, who were appointed as her guardians ad litem, and are the only appellants. It was also in evidence that her parents had been appointed her legal guardians in both Colorado and Texas. The trial court without aid of a jury found and concluded that "it is the duty of the trustee to make use of all sources of information, including the parents of Mollie Ann Penix, for the ascertainment of her needs and the sums of money necessary and reasonable for her support, maintenance and schooling; to exercise discretion in determining the sums and amounts reasonably necessary" for such purposes without taking into consideration the financial ability of her parents to support, maintain and educate her; and "to make all expenditures out of the revenue and income from property bequeathed to her and in trust for her as are reasonably necessary for her support, maintenance and education." The decree insofar as it related to the provisions now under review was in accordance with the foregoing findings and conclusions of the court, and denied the prayer of appellants for removal of the trustee.

Appellants' first point challenges the action of the trial court "in holding that Mollie Ann Penix was not entitled to all the net rents and revenues from her property as they accrued under the provisions of paragraph 26 of will of Mrs. W. G. Freese, deceased." There is no contention by the appellee that accumulations are to

be added to the corpus of the minor's legacy; on the other hand, appellee admits that ultimately all of the net income must be expended if reasonably necessary for the purposes stated prior to the time the minor becomes twenty-five years old.

At the time of trial there was an accumulation of $6,039.05 in the expendable trust fund. Owing to the controversy which had arisen the trustee had not made any payments to or for the minor's benefit, and it was stipulated that construction of the will was called for. The rents and revenues from the property devised to the minor amounted in gross to about $350 per month. Taxes amount approximately to $1,213.96 annually, and the average annual insurance cost is about $537.78. To the total of these, $1,751.74, must be added expense of repairs and upkeep, for which definite figures are not presented, although it appears that during the year 1949 such expenditures amounted to $452.97. The judgment directed the trustee to reimburse appellants for expenses in behalf of the minor since probate of the will.

There is no express language in the will authorizing or forbidding accumulations; neither authorizing nor forbidding the exercise of discretion by the trustee as to when and in what amounts contributions shall be paid for the support, maintenance and schooling of the minor. It is not necessary, however, for a will to speak in express language if the testamentary intent is reasonably deducible from the language used. 44 Tex.Jur., p. 684, Sec. 135. The first object, of course, is to ascertain such intent, if it can legally or reasonably be ascertained, and the next object is to effectuate such intention if it is not unlawful. 44 Tex.Jur., p. 680, Sec. 134. In doing so we must look to all parts of the will and to the instrument as a whole.

The same rules above expressed control the interpretation and construction of trust. "In determining whether surplus income from a trust should be accumulated or should be distributed, the courts endeavor to ascertain the intention of the creator of the trust as expressed or implied in the trust instrument, and are governed thereby, except as such intention may be found to be contrary to law or to public policy." 157 A.L.R., p. 673.

The will of Mrs. Freese presents a comprehensive scheme for disposition of her estate. To numerous beneficiaries, including the mother of Mollie Ann, she gave absolutely $25,000 each. To numerous others she gave sums from $500 to $2,500. To Reynolds Presbyterian Orphanage and School, of Dallas, she gave $25,000, in addition to a part of her residuary estate. To the trustee she gave $10,000, the income from which is to be used to pay the tuition of worthy girls who graduate from Paris High School, such girls to be selected by the principal of the high school. To appellants, parents of Mollie Ann Penix, she gave $5,000 for her college education, to be expended at the rate of $1,250 per year, this in addition to the bequest in Item 26. She set aside other property in trust for 'Judy Bliss, the net rents and revenues to be used for her support, maintenance and schooling, and in addition the sum of $5,000 was given in trust to her parents, to be used for her college education at the rate of $1,250 per year. To the parents of Bob Kellar and Billy Kellar she gave $10,000 to be used, $5,000 for the college education of Bob and $5,000 for the college education of Billy, in each case to be spent at the rate of $1,250 per year. By the thirty-third Item of her will, all the rest and residue of her estate is to be equally divided, one-fourth to be added to her former provisions for tuition for worthy girls at Paris Junior College; one-fourth to Reynolds Presbyterian Orphanage and School of Dallas; one-fourth to Texas Scottish Rite Hospital for Crippled Children, at Dallas; and one-fourth to the Sanitarium of Paris, a corporation, of Paris, Texas, "for the use and benefit of indigent children needing hospitalization in the Griffith's Children's Hospital."

Any comment by us seems unnecessary to show the deep and abiding desire and intention of Mrs. Freese to leave her estate to such persons and institutions, and for such uses, as were unquestionably near to her heart. Her liberality toward relatives and friends, her interest in the education

of the children named, in her church, the orphanage, crippled children, indigent sick children, in worthy girls desiring education, all disclose that these purposes were paramount in her thinking. She did not provide details in carrying out these purposes, leaving to the executor and trustee to accomplish the ultimate ends by use of sound judgment and reasonable discretion. Illustrative of this fact is the Seventh Item: "To Elizabeth Penix, a niece of my deceased husband, I will and bequeath the sum of Twenty-five Thousand Dollars ($25,000.00)." The same identical language is used in sixteen other personal bequests, except for the changes in names and in amounts. Neither time nor manner of payment is provided, whether in lump sum or in partial payments, whether within one month, or one year, or five years. Such provisions cannot be carried out without the use of discretion on part of the executor or trustee, upon whichever official the duty may ultimately rest to pay over the legacies. All other devises substantially fall within the same category, calling for use of reasonable judgment and discretion of the executor and trustee.

The appointment of the First National Bank as executor "with trust powers," and further as trustee, evidences confidence in that institution and its officers that her estate will be administered for the best interests of those who are the objects of her bounty. Debts, funeral expenses, inheritance and other taxes are to be paid. Since the estate is to be administered independently of the probate court, judgment and discretion must be exercised by the officials charged with the duty of making such payments. The Thirty-fifth Item in part reads: "I give and grant to my above named executor each and every power necessary to carry out the provisions of this will, including but not limiting the same to the power to sell property when in the opinion of my executor such sale is necessary to pay my debts, to pay special bequests, or to partition my estate among the devisees hereunder, and to invest and reinvest any funds any time belonging to my estate not required in the administration of my estate."

The Thirty-fourth Item, in providing that no bond shall be required of the "trustees", further provided that "They shall be free in the carrying out of such trusts from any supervision by the probate or other courts."

We think the foregoing references to the various provisions of the will clearly disclose that Mrs. Freese realized that conditions might exist and emergencies might arise which she could not reasonably foresee; that it would be impracticable and inadvisible for her to lay down rigid requirements and procedures to meet such contingencies; and that the ultimate purposes set forth in her will could best be carried out and administered by leaving it to her executor and her trustee to act not only free from any control by any court, but free from her own detailed control.

We think the particular provision now under review relating to the income to be expended for Mollie Ann falls within the purview of the foregoing analysis. The ultimate object set forth by testatrix is that such net income is to be expended by the trustee for Mollie Ann's support, maintenance and schooling during the pendency of the trust. The duty is upon the trustee, without benefit of substitute, to pay money out of the net income of Mollie Ann's trust estate for those purposes and none other. To the exact performance of this duty the trustee is pecuniarily liable. Payment of trust funds on hand and as they accrue, without regard to requirements for support, maintenance and schooling, would be a substitution of the will of the trustee for that of the testatrix. To pay such funds wholly to the natural and legal guardians of the minor would be to substitute the judgment and discretion of the guardians for that of the duly appointed trustee in expenditure of money; but there would be no substitution of the obligation and liability of the trustee. All these considerations are deducible from the language of the will and it must be assumed that they express the intention of the testatrix.

It is a matter of common knowledge that, as this little girl grows older and advances in her education as well as in her

social relations, the amounts of money reasonably required for her benefit will increase. Her father, Dr. Penix, testified that $100 per month is reasonably necessary at the present time; that through junior high and high school, the amount reasonably necessary would be $125 to $150 per month. On the basis of figures already stated, a surplus of approximately $1,200 per year may be accumulated prior to junior high school, and during her years through junior high and high school, the surplus may amount to as much as $600 per year. Dr. Penix further testified that through college her expenses would be at least $200 per month, or $2,400 per year. Thus the bequest of $5,000 provided for her in the Thirty-first Item of the will to be expended at the rate of $1,250 per year would be insufficient to provide for her support, maintenance and education during her college years. It would be hazardous, indeed, to assume that net income current ten or twelve years later will be ample to satisfy all demands reasonably necessary for her future college education and support.

Besides uncertainties of the future income and emergencies that may arise in relation to the property, the minor is faced with hazards the common lot of all. Sickness and accident may wreak havoc with her. Her support and maintenance in such case would be vital. We do not question that her parents would do everything they could in such case, as in all others, but such hazards may already have befallen them. The obligation and duty is with the trustee. It is in evidence that she now has an eye affliction that her father said may grow worse.

The trial court concluded that the intent of the testatrix as revealed in her will was that the trustee should use his discretion in the disbursement of the net income from the property bequeathed to Mollie Ann so as to serve her best interest; that in doing so the trustee's duty is to keep himself informed as to the needs and conditions of the minor and to apply the trnst fund for her benefit without regard to the financial ability of her parents. In affirming this action of the trial court we,

too, rely mainly upon the terms of the will and the inferences reasonably deducible therefrom.

Appellants say there are no Texas decisions directly touching this question of the right or duty of the trustee to accumulate a fund, that is, to create a reserve to take care of emergencies and contingencies which may arise during the term of the trust, in the absence of an express authority to do so. Neither party has pointed out such decision from this state, and we have found none. Appellants assert, however, that the Texas Trust Act, Art. 7425b–27, sub-section C, Vernon's Ann.Civ.St., forbids an accumulation of surplus by the trustee. We think the reverse is true. The applicable provisions of that statute read: "All income after deduction of expenses properly chargeable to it, *including reasonable reserves,* shall be paid and delivered to the tenant or retained by him if already in his possession or *held for accumulation where legally so directed by the terms of the transaction* by which the principal was established * * *." The italics are ours. The italicized expressions authorize a reserve. As already shown the instrument impliedly authorizes accumulation of a surplus and its expenditure for the purposes stated within the reasonable discretion of the trustee.

Among the various jurisdictions "There is a difference of opinion as to whether surplus income should be accumulated or distributed, where the creator of a trust has failed to indicate his intention in this regard." 157 A.L.R. 673. While there is authority holding the surplus income should be distributed under the circumstances stated, there is also equally respectable authority holding in support of accumulation. Adrian v. Koch, 83 N.J.Eq. 484, 91 A. 123; Id., 84 N.J.Eq. 195, 93 A. 1083; Commerce Union Trust Co. v. Thorner, 198 N.C. 241, 151 S.E. 263; Shirk v. Walker, 298 Mass. 251, 10 N.E.2d 192, 125 A.L.R. 620; In re Harris' Will, 170 Minn. 134, 212 N.W. 182; In re Sternberger's Estate, 121 Pa.Super. 50, 182 A. 723; McCrory v. Commissioner of Internal Revenue, 5 Cir., 69 F.2d 688; In re King's Estate, 121 Misc. 298, 200 N.Y.S. 829.

Some of the cases cited uphold broadly the right of the trustee to withhold a surplus or reserve to meet future charges or expenses, possible losses, deficiencies in income and other future contingencies. Others hold that it is the trustee's duty to withhold a surplus if reasonably it can be done. Our view of this matter is in accord with that of the Supreme Judicial Court of Massachusetts where it was held that the trustee was not required to pay over to income beneficiaries an accumulation of undistributed income, where it was found that it was prudent to build up and carry a reserve to meet expenses and to be prepared for any emergency which, unless it could be overcome by resort to income, might threaten stability of the trust. Shirk v. Walker, supra. This holding was in the face of the fact that the trust instrument required the trustee to pay over the net income annually or oftener if convenient, and to make up an annual account to determine the net income.

So, we think the better rule is that the trustee has the duty to exercise reasonable discretion and judgment in determining the amounts reasonably and properly to be paid for the support, maintenance and education of the beneficiary in such case as this, and that he has the right to withhold surplus income for future emergencies and contingencies. In the exercise of a sound discretion the trustee should consider the beneficiary's station and condition in life, and we think that is broadly comprehended in the trial court's judgment. Accordingly, appellants' first point is overruled.

Appellants' second, third, fourth, fifth and sixth points urge specific conclusions of the trial court as error, all of which are involved in our action on the first point. They each relate to the alleged reasoning of the trial court in reaching his conclusion as challenged in the first point. They present no error and are overruled.

■ Appellants' seventh point asserts error of the trial court in "holding that the plaintiff was not negligent and had not defaulted and failed to carry out its trust as regards the appellant, Mollie Ann Penix." The action to remove the trustee arose by way of appellants' cross-action, and the burden of proof was upon them. The court heard all the evidence on the issue and specifically found as a fact that "neither the trustee nor its officers or agents have been guilty of misfeasance of such nature as to authorize or justify removal of such trustee." In the judgment the court further found as a fact that "the plaintiff is discharging the duties and obligations imposed upon it and granted to it by the will of Mrs. W. G. Freese, deceased, and no ground exists for its removal as independent executor of her estate or as trustee under her will." Further in the judgment the court found "That plaintiff has not been guilty of negligence or mismanagement in the administration of the estate or any trust created by the will, and has not in any manner wasted or dissipated any property belonging to the estate or to any trust fund under the will."

■ It would serve no useful purpose here to review the evidence upon which the foregoing findings were based. We have carefully considered it and find that such findings and the decree entered thereon are in keeping with and amply supported by the evidence.

■ Art. 7425b–39, V.A.C.S., provides that "Trustees having materially violated (or attempted to violate) any express trust resulting in an actual financial loss to the trust, or becoming incompetent or insolvent * * * or for other cause, in the discretion of the court having jurisdiction, may, on petition of any person actually interested, after hearing, be removed by such court * * *." The expression "in the discretion of the court", qualifies each ground and clause appearing in the sentence before such expression. In this particular the statute is a reaffirmation of general rules announced in prior decisions. Under such rules the court, in absence of a jury, is the trier of the facts, and passes on the credibility of the witnesses and the weight and sufficiency of the testimony. Its findings will not be disturbed if there is evidence of probative force to support them, unless such evidence is overcome by the great weight and pre-

ponderance of the credible testimony. In re King's Estate (King v. King), Tex.Sup., 244 S.W.2d 660. "It is elemental that where matters are entrusted to a court's discretion his acts will not be reversed on appeal in the absence of a showing that he has abused that discretion." Gilles v. Yarbrough, Tex.Civ.App., 224 S.W.2d 720, 722; Vol. 3B, Tex.Jur., Sec. 924, p. 411, et seq. The seventh point is overruled.

Finding no error calling for reversal, the judgment of the district court is affirmed.