ALLEN, Chief Judge.
This is a timely appeal from a final decree in which the circuit judge construed two trust instruments requiring the trustee to pay $625.00 per month under each trust and granting a summary final decree in favor of the appellee.
On October 29, 1962, the plaintiff, H. B. Watkins, entered into two irrevocable inter vivos trust agreements with the defendant bank. The two trusts were identical, except plaintiff, Peter Robert Watkins, was the beneficiary of one and plaintiff, Vance David Watkins, was the beneficiary of the other. The two minor beneficiaries were the children of H. B. Watkins and Luise Watkins. That marriage was dissolved on November 2, 1962. The former Luise Watkins remarried on November 30, 1962, and now is known as Luise D’Adamich.
The appellant-donor, H. B. Watkins, transferred to the trustee 3000 shares of the capital stock of Naples Golf and Beach Club and provided that additional property might, from time to time, be transferred by the donor or any other person or. persons to the trustee and become a part of the trust estate.
Paragraph 2 of the Trust Deeds provides:
“2. The Trustee shall hold, manage, invest and reinvest the trust property for the beneficiary, collecting and receiving the income and profits for the benefit of the beneficiary; provided: (a) The net income for the two fiscal years beginning November 1st, 1962 and ending October 31st, 1964 shall *576 be accumulated and be held for the benefit of the beneficiary and, during such time, the Donor shall pay to the Trustee the total sum of $15,000.00 in such installments as may assure the Trustee sufficient funds to pay $625.00 per month to, or for the benefit of, the beneficiary, the first payment to be made during the month of November, 1962; (b) During said two fiscal years, the Trustee (out of the total sum of $15,000.00 to be so paid by the Donor) shall pay to, or for the benefit of, the beneficiary, the sum of $625.00 per month; (c) On and after November 1st, 1964, the Trustee shall pay to, or for the benefit of, the beneficiary (out of the net income of the trust accruing on and after November 1st, 1964), the monthly sum of $625.00; and (d) Until the beneficiary attains the age of 21 years, if there shall not be sufficient net income of the trust to pay the sums of money prescribed in sub-section (c) of this Paragraph 2, the Donor shall pay to the Trustee such sums of money from time to time as may be necessary to make up the deficit.”
The Trust Deeds further provide, in Paragraphs 3, 4, 5 and 6:
“3. Subject to the provisions of Paragraph 2 hereof, there may be expended by the Trustee to, or for the benefit of, the beneficiary before he attains the age of 25 years, so much of the principal and current or accumulated net income, at such time and in such amounts and manner as the Trustee, in its sole discretion, shall determine. Any amounts of such net income which the Trustee shall determine not to expend to, or for the benefit of, the beneficiary may be accumulated.
“4. When the beneficiary attains the age of 25 years, this trust shall terminate and all of the trust property as it shall then exist, both principal and income, shall pass to the beneficiary, the same to be paid and distributed to the beneficiary free and discharged of any trust.
“5. If the beneficiary dies before attaining the age of 25 years, all of the trust property as it shall then exist, both principal and income, shall: (a) Go to the lineal descendants of the beneficiary, per stirpes; or (b) If the beneficiary dies without leaving surviving lineal descendants, the same shall go to and become a part of the trust created this day for Vance David Watkins [or Peter Robert Watkins] which trust is in all other respects identical with this trust.
“6. The Trustee may make payments for the benefit of the beneficiary directly to him or to the guardian of the beneficiary, or to any person deemed suitable by the Trustee, or by direct payment of expenses incurred for the beneficiary’s benefit. All such payments shall be made for the care, welfare, maintenance, education, and health of the beneficiary.” (Emphasis added.)
The trustee began paying the full amount of $625.00 per month, under each trust, to the mother of the beneficiaries. On February 5, 1964, the mother, Mrs. Luise D’Adamich, was appointed guardian of the property of H. B. Watkins’ two sons and she continued to receive the full $625.00 per month for each beneficiary. The trustee then sent several letters to Mrs. D’Adam-ich requesting that an accounting be made of the monies transferred to her. To date, no accounting has been made.
Plaintiff filed suit in January, 1964. The complaint alleged, and affidavits showed, that the settlor of the trusts intended that all payments be made exclusively for the care, welfare, maintenance, education and health of the beneficiaries. Plaintiff prayed that the chancellor construe the terms of the trust and declare that the settlor intended payments to be in amounts up to $625.00 per month sufficient to pay the *577 actual expenses for the care, maintenance, etc., of the beneficiaries and to have the trustee accumulate any surplus.
Mrs. D’Adamich’s deposition, filed as part of defendant’s proof, showed that no records of the trust funds have or had ever been kept since Mrs. D’Adamich was appointed guardian. In response to how much the clothing cost for the two boys, whose ages were seven and eight at the taking of the deposition, she stated:
“ * * * They may take $1,000 a year and they may cost $22,000 a year. They are very well dressed. * * * I might buy them a fur lined or mink lined coat. I wouldn’t know.”
On further inquiry into how much she had spent for clothing, she stated she paid some by cash and some by check. She offered little help on this subject at the deposition hearing, but at one point she stated $500.00 per year would probably cover tuition, uniforms and school clothing, plus certain school expenses.
Mrs. D’Adamich’s deposition reveals she deposited the two $625.00 checks each month into a joint account maintained with her current husband. Other monies were also received and withdrawn from that account. In revealing how she had disbursed some $20,000 received up to the date of the deposition, which would have been a little over two years, she replied:
“Well, I can give you a general idea. Now, of course, I have to feed them their food and it’s very high here. They are accustomed to eating — they will only eat filet mignon and lamb chops, but that makes no matter. Their food and their housing — they have a brand new boat and a brand new swimming pool. * * * There is education and doctor, clothing, medicine, vitamin pills, laundry, nurses and maids and everything, television, chauffeur and cars, and whatever they wanted I think they had it.”
In response to a question stating:
“I understand that you are a good mother.”
Mrs. D’Adamich exclaimed:
“No, that isn’t it. I won’t steal from them but I will steal for them.”
The deposition contains other comments by Mrs. D’Adamich of the same general nature.
The chancellor entered final summary decree requiring the trustee to pay $625.00 per month under each trust. We note with reference to paragraph 6 of the trusts, that the trial judge’s order found that the terms of the trust deeds imposed a mandatory duty on the trustee to pay the sum of $625.00 monthly, under each trust agreement, to the guardian of the property of each minor child named in said trust agreements.
We believe that paragraph 2 of the trust conflicts patently with paragraphs 3, 4, 5 and 6 of the trust agreements. One court interpreted a trust instrument, with provisions comparable to the trusts in the instant case, that only income necessary for maintenance and support should be paid out.
Thus, in Penix v. First National Bank of Paris, 260 S.W.2d 63 (Tex.Civ.App.1953), the Court had before it an action by a testamentary trustee for declaratory judgment to determine the rights between trustee and various beneficiaries under a will. The Court held the provision of the testamentary trust required that during pendency of the trust all net rents and revenues of trust property should be used for support, maintenance and schooling of the minor beneficiary. This interpretation required the trustee, without benefit of a substitute, and in his discretion, to pay money out of net income for minor’s support, maintenance and schooling in accordance with minor’s best interests and for no other purposes; in so doing trustee was entitled to accumulate unexpended net income for future emergencies and contingencies.
*578 The 26th item of the will provided that a store building and lot was devised and bequeathed to the minor Mollie Ann Penix with the express provision “that it shall remain in.the hands of the trust department of the First National Bank of Paris and under its control in trust for the said Mollie Ann Penix until she reaches the age of twenty-five years, at which time the said property shall be turned over to her free from such trust.”
The Court, in its opinion, stated the controversy, then challenged the trial court’s construction of the concluding sentence of Paragraph 26, which reads: “During the pendency of the trust all net rents and revenues shall be used for her (Mollie Ann’s) support, maintenance and schooling.”
Mollie Ann was nine years old and residing in the State of Colorado with her parents, who were appointed as her guardians ad litem. The trial court concluded that it was the duty of the trustee to make use of all sources of information, including the parents of Mollie Ann Penix, to ascertain her needs and the sums of money necessary and reasonable for her support, maintenance and schooling; to exercise discretion in determining the sums and amounts reasonably necessary for such purposes without taking into consideration the financial ability of her parents to support, maintain and educate her; and to make all expenditures out of the revenue and income from the property bequeathed to her and in trust for her as was reasonably necessary for her support, maintenance and education.
In Penix, the appellants’ first point challenged the action of the trial court “in holding that Mollie Ann Penix was not entitled to all the net rents and revenues from her property as they accrued under the provisions of paragraph 26 of the will of Mrs. W. G. Freese, deceased.”
The Court stated:
“ * * * There is no contention by the appellee that accumulations are to be added to the corpus of the minor’s legacy; on the other hand, appellee admits that ultimately all of the net income must be expended if reasonably necessary for the purposes stated prior to the time the minor becomes twenty-five years old.
“ * * *
“There is no express language in the will authorizing or forbidding accumulations ; neither authorizing nor forbidding the exercise of discretion by the trustee as to when and in what amounts contributions shall be paid for the support, maintenance and schooling of the minor. It is not necessary, however, for a will to speak in express language if the testamentary intent is reasonably deducible from the language used. 44 Tex.Jur., p. 684, Sec. 135. The first object, of course, is to ascertain such intent, if it can legally or reasonably be ascertained, and the next object is to effectuate such intention if it is not unlawful. 44 Tex.Jur., p. 680, Sec. 134. In doing so we must look to all parts of the will and to the instrument as a whole.
“The same rules above expressed control the interpretation and construction of trust. Tn determining whether surplus income from a trust should be accumulated or should be distributed, the courts endeavor to ascertain the intention of the creator of the trust as expressed or implied in the trust instrument, and are governed thereby, except as such intention may be found to be contrary to law or to public policy.’ 157 A.L.R., p. 673.” (Emphasis added.)
Subsequently, in the Court’s opinion in Penix, supra, the Court commented:
“ * * * as this little girl grows older and advances in her education as well as in her social relations, the amounts of money reasonably required for her benefit will increase. * * ”
*579 Her father, Dr. Penix, testified as to the amount necessary to maintain her through junior high and high school and the increased amount through college.
The Court then stated:
“Besides uncertainties of the future income and emergencies that may arise in relation to the property, the minor is faced with hazards the common lot of all. Sickness and accident may wreak havoc with her. Her support and maintenance in such case would be vital. We do not question that her parents would do everything they could in such case, as in all others, but such hazards may already have befallen them. The obligation and duty is with the trustee. It is in evidence that she now has an eye affliction that her father said may grow worse.
“The trial court concluded that the intent of the testatrix as revealed in her will was that the trustee should use his discretion in the disbursement of the net income from the property bequeathed to Mollie Ann so as to serve her best interest; that in doing so the trustee’s duty is to keep himself informed as to the needs and conditions of the minor and to apply the trust fund for her benefit without regard to the financial ability of her parents. In affirming this action of the trial court we, too, rely mainly upon the terms of the will and the inferences reasonably deducible therefrom.”
We are of the opinion that it is necessary to remand the case to take testimony to determine the intent of the settlor. Thus, the trial judge may have the testimony of Mr. Watkins and the appellee may have the opportunity to cross-examine him and not be limited to the affidavits.
In Pancoast v. Pancoast, Fla.App. 1957, 97 So.2d 875, we reviewed a decision from the Circuit Court of Hillsborough County, where the circuit judge had entered a summary decree against the plaintiff, who appealed. The case involved a declaratory action seeking a decree construing the will of Sarah N. Pancoast.
This court, in an opinion by Judge Pleus, held that the will was ambiguous; that it was necessary to take evidence to determine the intent of the testatrix; and that under the facts of the case, it was not an appropriate one for a summary decree. The case was reversed and remanded with directions.
In his opinion, Judge Pleus stated:
“The fundamental and controlling axiom is to ascertain and effectuate the intention of the testator as gathered from what was written in the will. Wallace v. Julier, 1941, 147 Fla. 420, 3 So.2d 711. In order to do this the court should as nearly as humanly possible try to put itself in the place of, or the armchair of, the testator. To accomplish this it is proper to consider all circumstances surrounding the execution of the will, the condition, nature, and extent of the property devised, the testator’s relationship and attitudes toward the members of his family and to the beneficiaries of the will, their financial condition and in general the relationship between all the parties concerned, including, as in this case, the trustee. 57 Am.Jur., Wills, Section 1144. Florida courts have consistently followed this practice. * * * [Citations omitted.]”
After the case was returned to the lower court for a rehearing and the trial judge entered judgment, the case was again appealed to this court, Pancoast v. Pancoast, Fla.App. 1958, 107 So.2d 787.
In this case, we stated at page 791:
“We approach the instant case under different circumstances from those under which an appellate court ordinarily passes upon a lower court’s construction of a Will. It will be noted that in the former hearing before this court, we held that the involved Will *580 was ambiguous and remanded the cause to the lower court for the taking of evidence to determine, from the Will itself and from such evidence, what the intent of the testatrix was when she executed said Will. Evidence was taken before the lower court, and he determined, as a question of fact, that the intent of the testatrix was to leave her property in trust for the benefit of only her sons, and the survivors or survivor thereof. If the lower court had sufficient substantial, competent evidence before him to determine this fact, then this court must give the lower court the weight ordinarily given to the findings of the trier of facts upon review by an appellate court. It is well settled in Florida the findings of fact by a probate judge which are based upon substantial, competent evidence will be given the same weight, on appeal, as the findings of any other trier of fact.”
The justification for permitting testimony to be taken to resolve the conflict of trust provisions was summed up by a noted authority.
“If a settlor directs a trustee to pay or apply all or a definite part of the income of a trust ‘for the support’ of a beneficiary, the mention of support may merely show the motive or purpose of the settlor, and not a limitation of the power of the trustee as to payments or a direction that the trustee is to use discretion as to the amount needed for support and pay or apply only such sums as are required for that purpose.
“But in many cases the trustor has shown an intent to restrict the payments to those which will be necessary to produce support and maintenance, and to give his trustee discretion to decide how large the payments or application shall be. It then becomes a question of construction as to what ‘support and maintenance’ means and whether the satisfaction of some particular need or desire of the beneficiary qualifies.” [Bogert, Trusts and Trustees § 187 at 200 (2d ed. 1962)]
/ If, after testimony is taken, the mother and guardian of the children continues to ignore the demands that she account for the proper distribution for these sums of money, paragraph 6 provides that not only may the payments be made to the guardian of the beneficiaries, but also that they may be made directly to the beneficiaries, or to any person deemed suitable by the trustee, or by direct payment of expenses incurred for the beneficiaries’ benefit.
We reverse the chancellor and return the record to him for the purpose of taking testimony to determine the intentions of appellant, H. B. Watkins, at the time the two trusts were executed.
Reversed.
LILES, J., and DEKLE, HAL P., Associate Judge, concur.