GROVER C. LIPPARD,

*vs.*

FRANK P. PARISH and ROBERT V. WHITE, two of the Voting Trustees under a Voting Trust Agreement dated April 1, 1930, in respect to Class "B" Stock of Missouri-Kansas Pipe Line Company, a Delaware corporation, and ALBERT L. MASSEY.

*New Castle, May 4, 1937.*

*William Prickett,* of Wilmington, and *Kenneth E. Walser,* of the firm of Spence, Hopkins, Walser & Hotchkiss, of New York City, for complainant.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, of Wilmington, and Dupuy G. Warrick, of Kansas City, Mo., for demurrant.

THE CHANCELLOR: On the question of parties what was said in the opinion filed on this day in *Perry v. Missouri-Kansas Pipe Line Co., et al., post p.* 33, 191 *A.* 823, is equally applicable in this case.

Inasmuch as White has answered the bill, it is necessary to notice the allegations only in reference to the case they make against Parish.

The capital structure of the Missouri-Kansas Pipe Line Company, herein called Mo-Kan, may be ascertained for the purposes of this case, by referring to the opinion filed in the *Perry Case, supra.*

The trust was formed on April 1, 1930. Parish was one of the original voting trustees. The purpose of the trust

was to promote a uniform, consistent and stable policy of management of Mo-Kan, which meant, if the bill's allegations are true, the continuance of policies by a management in which Parish was a very prominent if not the controlling person. Parish was at the time and has ever since been the president of the company. As a result of circumstances not now necessary to detail, Mo-Kan became highly insolvent and receivers were appointed for it on March 18, 1932. The receivers have not yet been discharged. Mo-Kan has been restored to a condition of solvency by reason of a certain settlement, which this court authorized, of a large claim against certain so-called Columbia Companies, the assets recovered by the settlement consisting of stock of Panhandle Eastern Company having a present value, according to the allegation of the pending bill, of twenty-five million dollars. Mo-Kan owns nearly one-half of the Panhandle Eastern common stock and the Columbia interests own the remainder.

In view of the present substantial assets of Mo-Kan and the imminence of its release from the receivership, the question of the personnel of its board of directors has become one of acute interest to its stockholders. During most of the more than five years of the receivership, no one was concerned with who should be the directors. In fact no meeting of stockholders was ever sought to be convened during that period to elect directors, until recently when this court, anticipating the near discharge of the receivers and the turning over to the corporation of its valuable assets, appointed a master to conduct an election.

It was when the master was taking the vote, that the question presented by the pending bill was precipitated. Two of the three trustees presented a ballot for the election of three of the seven directors. Objection was made and before the master acted the pending bill was filed seeking an injunction against the casting of the ballot, a removal of

two of the trustees and the appointment of others in their stead.

It is objected first that the complainant is guilty of laches. It is said that the wrongful acts of Parish which the complainant advances as grounds for his removal occurred as long as six and seven years ago, that the complainant has remained silent during the long interval and ought not at this late date, when directors are in course of selection, be heard to object to Parish as a voting trustee. When the complainant first learned of the alleged wrongdoing of Parish, is not shown by the bill. When the bill for receivers was filed, it is not to be assumed that the complainant was then in possession of the facts he now advances in support of his case. Assuming that he learned of them after the receivers were appointed, I do not think it fair to say that he was guilty of laches in not moving to oust Parish on account of those facts while the receivership was pending. From what I know off the record I am prepared to state as a fact what otherwise I would preface with a *"non constat,"* viz., there was absolutely no point in anyone's quarrelling over who should be the directors of Mo-Kan during by far the most of the duration of the receivership. Until late in the receivership, Mo-Kan's worth was thought by many to be less than nothing. It was only when a settlement of disputed claims yielded an estate, that even the existence not to say the personnel of a board of directors became of any current interest. When the question of directors became a live one, and this court by the appointment of a master to hold an election brought the question forward for decision by the stockholders, what had before been a matter of mere academic interest became one of present practical importance. The bill, too, shows that some reason existed for the belief, down to shortly before the meeting, that Parish did not propose to exercise his rights as a voting trustee.

Under the circumstances I do not think the complain-

ant should be turned out of court because of any supposed laches on his part. Certainly Parish, who in a letter attached to the bill as an exhibit, disclaims all personal interest in Mo-Kan, has not been injured by the complainant's supposed laches in filing his bill. Before laches is admitted by a court of equity as a bar to the complainant's bill, it is generally required that some showing be made that the defendant has been prejudiced in some way by the delay.

Furthermore, it is to be observed, this bill does not seek to obtain from Parish redress for the alleged wrongs of some six or seven years ago. If it did, laches as a bar would be entitled to more serious consideration. The bill refers to the alleged misbehavior of Parish in 1929 and 1930 only as disclosing a reason why he should not be permitted to act now as a voting trustee.

Laches as a ground of demurrer is not accepted.

The demurrer challenges the general equity of the bill. The case shown by the bill against Parish is very briefly as follows. He has a personal interest to serve in the selection of directors which is in marked opposition to the interests of the corporation. That personal interest is as follows. The bill charges that he, with others, is being sued by an ancillary receiver for Mo-Kan in Chicago for a large sum, eighteen million dollars, for loss which he and his co-defendants in that suit caused it to suffer by reason of certain wrongs and misconduct on his part which I shall not pause to describe. That suit is still pending. The bill charges in substance that it would be highly unjust and contrary to the plainest principles of equity to allow Parish in the exercise of fiduciary powers to assist in the naming of three of seven directors who will in all probability soon have to determine what disposition is to be made of that Chicago suit—whether to discontinue it or to dismiss it. Furthermore, the bill contains allegations which justify the view that Parish, notwithstanding he no longer has any

personal interest in Mo-Kan, favors a policy for that corporation of liquidation, which of course means dissolution. If dissolution ensues, the gradual easing off of the Chicago suit against Parish will to an extent be aided if it is not actually accomplished. I am aware that the directors cannot of themselves dissolve a corporation. The first step in a dissolution, however, is the adoption of a resolution to that end by the directors. A resolution by the directors carries great weight with the stockholders, and, therefore, the personnel of the directorate is of considerable consequence in a matter of a corporation's dissolution. As the judgment of the directors carries much weight with the stockholders, every assurance that is reasonably possible should be provided, that the directors are led to their conclusions solely by a regard for the interests of the corporation and its stockholders. When a voting trustee is one of three who are to choose directors and the directors so chosen are to sit in judgment upon him in his controversy with the corporation, it does not seem that he ought to be credited with having that degree of disinterestedness which ought always to attach to one who is in an office of trust, when the question arises of choosing the directors. It is not a wholesome situation.

Now, I do not of course pretend to say what if any merit there is in the Chicago suit against Parish. One of his co-defendants therein has made a settlement by a money payment. A federal court has seen enough of merit in the claim to instruct its receivers to assert it in a bill for an accounting.

In view of the facts, I am of the opinion that Parish as trustee ought not to participate in the election of three directors of Mo-Kan. A court of equity ought not to permit a trustee to sit in judgment between his duty and his personal interest. An absolutely impartial personality ought to be interposed between him and his beneficiaries.

It will not do to say, as was said at the bar, that if the directors, when the corporation is restored to their control, should perchance unwarrantably decide to abandon the claim against Parish, a court could stop the supposed wrong by appointing a receiver. Abandonment of the case is not the only thing to be borne in mind. The manner of its conduct is equally important. If under the general principles of equity a situation exists which should not be allowed to continue, it does not seem reasonable to conclude that nevertheless it should be continued on the theory that its possibilities of evil may be subsequently corrected by court decrees when they are shown by proof to have materialized.

In view of all the facts shown by the bill and assuming them of course to be true, I am of the opinion that a case is shown for the removal of Parish as a trustee. The attack which the demurrer makes against the general equity of the bill is not sustained.

I now turn my attention to the grounds urged by way of special demurrer to the bill. Those grounds are all addressed to the indefiniteness and the lack of sufficient particularity with respect to the allegations contained in paragraphs 9, 18, 25, 26, 27, 28 and 29.

With respect to the objection to paragraph 9, the question is the same as was raised in the demurrer to paragraph 10 of the *Perry bill, supra.* It was disposed of under the fourth head of discussion in that opinion, to which reference may be made.

As to paragraph 18, I can find no valid objection thereto on the score of vagueness and indefiniteness.

As to paragraph 25, the demurrer is not sustainable. The comments made in the *Perry Case* with respect to paragraph 18 in that bill are applicable here.

The demurrer to paragraph 26 is not well taken. The paragraph states a conclusion that damage of irreparable

character will ensue if Parish and White vote the "B" stock. The allegation is only an indirect way of saying that a case is made by the preceding part of the bill which is cognizable in this court.

Paragraph 28 is objectionable. It charges that Parish by his transactions before the organization of Mo-Kan and after its organization, while he was president and one of the directors of Mo-Kan, and while he was a voting trustee, had disqualified himself from continuing to act as such trustee. If this allegation were confined to the facts recited in the bill, it would not be objectionable on the score of indefiniteness. It is not so confined. The defendant, Parish, cannot possibly answer that allegation except by a denial as general in its terms as is the charge. On such an allegation and answer, the complainant could roam at will over Parish's career in Mo-Kan's affairs, and Parish would have no means of knowing to a reasonable extent what particular behavior of his was to be proved against him and what, therefore, he would have to meet at the trial.

Paragraph 29 is concerned only with White's fitness to be a trustee. White has chosen to answer the bill. If the allegation is definite enough for White to answer, I do not see why Parish should be heard to object to it.

The demurrer should be sustained in part and overruled in part as hereinabove indicated.

Order accordingly.