ELLEN WALKER SHIRK & others *vs.* JOSEPH WALKER.

Suffolk.    April 5, 1937. — September 17, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Trust,* Removal of trustee, Distribution of income. *Equity Pleading and Practice,* Parties.

There was no ground for removal of a trustee where it appeared that for many years he had managed the trust property faithfully and efficiently, that the few errors he had made were honest errors of judg-

ment or of law which could be corrected on an accounting, and that other alleged grounds of complaint against him had not been established, although there was some hostility toward him by the life beneficiaries.

Under a trust deed of a large office building requiring the trustee to determine and distribute the net income "annually," he could withhold from distribution sufficient income to maintain a reasonable reserve account for the prompt payment of anticipated expenses chargeable to income and for emergencies.

Under a trust for lives with contingent remainders over, the remaindermen and persons unascertained or not in being were necessary parties to a suit which involved the question whether a payment on the principal of a mortgage should be charged to income or to capital.

BILL IN EQUITY, filed in the Superior Court on October 18, 1935.

The suit was heard by *Broadhurst*, J. All parties appealed from a final decree entered by his order.

*W. Powers*, (*W. White* with him,) for the plaintiffs.

*J. Noble*, for the defendants.

QUA, J. This is a suit in equity by the life beneficiaries against the trustee under a written instrument dated October 4, 1893, wherein Joseph Henry Walker in his lifetime conveyed to the defendant, who was one of his sons, certain real estate on Boylston Street in Boston upon which now stands what is known as the Walker Building, in trust on terms elaborately set forth in the instrument. The defendant has acted as such trustee for over forty years.

In general the purpose of the trust is to pay the income from the property to the grantor for his life and thereafter to his four children, who are the three plaintiffs and the defendant, or their issue, during the lives of the children and the survivors of them, and upon the decease of the last surviving child, to pay over the principal *per capita* to the then living grandchildren of the grantor and to the issue of any deceased grandchild by right of representation. The grantor deceased in 1907, since which time the defendant has been paying the income to the three plaintiffs and himself in equal shares.

From the final decree of the Superior Court the plaintiffs appeal on the grounds that the court wrongly refused to remove the defendant as trustee and wrongly refused to

order the defendant to make a present distribution of accumulated income.

1. The main question in the case relates to the removal of the trustee. In view of the conclusion which we have reached on this branch of the case, it has become unnecessary to decide whether under G. L. (Ter. Ed.) c. 203, § 12 (compare *Dexter* v. *Cotting*, 149 Mass. 92; *Chase* v. *Chase*, 216 Mass. 394), or under general principles of equity jurisdiction the court has power to remove a trustee without making contingent remaindermen parties or without appointing a guardian *ad litem* for persons unascertained or not in being. *Ciarmataro* v. *Adams*, 275 Mass. 521, 528. *Weston* v. *Fuller*, 297 Mass. 545, 547.

The plaintiffs call attention to the high standard of duty imposed by the law upon a trustee and to the requirements of absolute fidelity and singleness of purpose on his part, and urge that the defendant is no longer a suitable person to administer the trust, because he has by his management aroused the permanent and justifiable distrust and hostility of the income beneficiaries other than himself, and because he has not dealt impartially with the beneficiaries and has misused the trust funds to his own advantage. More specifically the grounds of grievance appear to be that the defendant in 1933 unnecessarily and without informing the life beneficiaries reëmployed his own son as "agent" for the Walker Building at a salary of $4,800 a year (later reduced to $3,600), although ten years before he had removed this same son from the payroll after protests had been made by the plaintiffs; that in 1933 he began charging to the estate one half of the salary of his secretary and bookkeeper, all of which he had previously paid from his own pocket; that, without informing the plaintiffs, he entered into "dealings" with the bank which held the first mortgage on the Walker Building looking toward a possible arrangement by which payments might be made on the principal of the mortgage out of income from the property; that the trustee is partial to the remaindermen as against the life beneficiaries, although himself only a life beneficiary, because out of the eight grandchildren of the original settlor

now living who are presumptive inheritors of the remainder, five are children of the defendant and only three are children of any of the plaintiffs; that the trustee has therefore habitually favored the capital of the estate at the expense of income by charging various expenditures, including some for "permanent improvements," to income which should have been charged to capital or assumed by the defendant personally; and that in certain instances he has taken for his own compensation commissions upon receipts which were not properly income on which trustee's fees ought to be allowed.

The judge has made careful and detailed findings of material facts. The evidence is also reported. It consists almost entirely of the testimony of the defendant himself, who appears to have been on the stand seven or eight days. The trial judge had this opportunity of observing the defendant and of judging as to his ability and fairness. The general rule should therefore prevail that although this court will examine the evidence and use its own judgment, it will not reverse findings of the trial judge unless it regards them as plainly wrong. *Comstock* v. *Bowles*, 295 Mass. 250, 253–254. *Wasserman* v. *Hollidge*, 267 Mass. 460, 469. *Draper* v. *Draper*, 267 Mass. 528, 531. *Johnson* v. *O'Lalor*, 279 Mass. 10, 13. *Masterson* v. *American Employers' Ins. Co.* 288 Mass. 518, 521. After reading the evidence, we are convinced that the findings are not plainly wrong, but that they are amply supported by the evidence.

Findings pertinent to the issue of the trustee's removal in abbreviated form are these: During the past twenty years the defendant has given all his time, except vacations, to the administration of the trust. The building has a rentable floor space of about one hundred thousand square feet. The defendant maintains a staff of about thirty employees, including engineers and a superintendent. He operates a generating plant and sells electricity and steam to customers outside the building. From the death of the settlor in 1907 through the year 1932 each of the four income beneficiaries has received in all over $359,600. In March, 1923, the defendant employed his son George R.

Walker at the building at a salary of $3,600 a year, paid by the trust. He had promised his son that the son should have an income at the rate of $6,000 a year, and the defendant therefore paid the balance from his personal funds. The plaintiff George Walker learned of his nephew's employment in the fall of 1923 and at once demanded his removal. He was supported in this demand by his two sisters, the other plaintiffs. After a series of letters between the parties in which the matter was argued on both sides, the defendant removed his son from the payroll and reimbursed the trust for all that the son had been paid. The defendant, however, still insisted that an agent was necessary and notified his brother by letter that he would continue to employ his son, but would pay him out of his personal funds until he made other arrangements. The plaintiff George Walker replied that he would object to the hiring of an additional agent and requested that he and his sisters be consulted before that was done. From that time until February 8, 1933, the defendant continued to employ his son about the building and to pay him out of his own pocket. Before that date the trust had begun to be affected by the depression. In the year 1927 the sum of $100,000 had been distributed among the income beneficiaries. But thereafter the receipts dwindled to such an extent that in spite of salary reductions no income was distributed after March, 1933, and since 1934 the building has been operated at a loss. On February 8, 1933, the defendant added to the payroll one half the salary of his secretary and bookkeeper, which amounted to $900 a year. Before that he had been paying her entire salary of $1,800 a year from his personal funds, although she devoted at least three quarters of her working time to the service of the trust. It was reasonably necessary that the trustee have her assistance. It would have been reasonable and prudent for the trustee to have employed such assistance long before February, 1933. Her services have been worth all that the defendant as trustee has paid for them. On February 8, 1933, the defendant also restored his son to the payroll of the trust beginning at the rate of $4,800 a year. This was reduced

later to $3,600. The depression had added to the cares and labors of the trustee and his staff, and it was helpful to the defendant to have his son share them. But in view of conditions then known and reasonably to be anticipated, a prudent business man would not have employed such an assistant, but would have arranged to do the necessary work without him. The defendant had, however, been advised by his counsel that if it was reasonably necessary he could employ his son and his secretary at the expense of the trust without consulting the other beneficiaries. He did not mention these additions to the payroll in his communications to the beneficiaries or inform them of his action until January, 1934, when he sent out his annual report for 1933. Having the trust pay his son a salary and half of his secretary's salary was a financial relief to the defendant. "But on all the evidence I find that the trustee honestly believed that the circumstances warranted his employment of his son at the trust's expense from February 8, 1933, and so thought he was entitled to that relief. He was still under no legal obligation to consult the other beneficiaries before making these appointments." He knew that the other beneficiaries would object. His failure to tell them "was deliberate and reflected a lack of tact and candor," but it "did not amount to wilful refusal to disclose facts they had a right to know about, or show unfitness to hold his position as trustee. Nor does the employment itself of George R. Walker as agent of the building at the trust's expense in February, 1933, constitute such injury to the trust estate and the interests of the beneficiaries therein, as to demonstrate the defendant's unsuitability as trustee and to warrant his removal. The trust estate and the interests of the beneficiaries can be adequately protected by requiring the defendant to cease paying his son with trust funds, and to repay to the income account all that has been taken from it since February 8, 1933, to pay to George R. Walker. At the worst, the defendant's error was one of judgment."

As to the defendant's "dealings" with the bank with reference to making payments on the mortgage out of

income, it appears that the mortgage was overdue and that the bank was demanding part payment of the principal sum. The liquid capital of the trust was sufficient to pay only a comparatively small part of the total mortgage of $675,000. It was proper to ascertain what arrangement could be made to pay out of income. The judge finds that the defendant was trying to negotiate an agreement with the bank in order to submit it to the income beneficiaries for their approval. He was not obliged to invite them into the preliminary negotiations. There was no wrongful conduct or wrongful concealment in this matter.

Neither the findings of the judge nor the evidence discloses any policy on the part of the defendant to favor the remaindermen as against the life tenants in the matter of charging expenditures. Separate discussion of each item would unreasonably extend this opinion. Many of the items charged to income are for the costs of making alterations to suit the particular desires of incoming tenants. Although these constructions are permanent unless removed, they cannot, in general, be called improvements, as the next tenant may desire an altogether different arrangement. The expenses of this nature shown in evidence were properly chargeable to income as an expense of operating the building. Other items in the nature of real improvements were charged to income under the peculiar wording of the first paragraph setting forth the terms of the trust, under which the judge ruled that the trustee rightly charged to income all the "improvements" of which complaint is now made. Without casting any doubt upon the correctness of this ruling, it is not necessary to pass upon it here, as it is not challenged by any party on these appeals, except as the defendant's conduct bears upon the question of his removal. As to that it is enough to say that the defendant had strong arguments in the language of the trust instrument in favor of the course which he took. In one or two instances there may possibly have been errors of law or of judgment in making charges to income which more properly belonged to capital, but these, if there were any, were such that they could readily be corrected upon accounting. At most they

were no more than might be expected in the administration of a large trust of this kind, involving the collection and disbursement of many thousands of dollars each year over a long period of years. They do not indicate favoritism or partiality by the trustee.

On this branch of the case the judge summarized his findings in these words: "All the evidence and facts found . . . completely exonerate the defendant of the charges made by the plaintiffs, that he paid the costs of such alterations and improvements out of income rather than out of an adequate cash capital because it was his deliberate purpose to enhance and build up the corpus of the trust at the expense of the income beneficiaries for the benefit of his children. He had no such purpose."

Much the same might be said in relation to two matters as to which it is contended that the trustee has based his own commissions upon receipts which were not properly income for that purpose. The amounts involved are comparatively small. Any mistake the defendant may have made could be corrected. No dishonest purpose is shown. As to one of these matters the judge found that the defendant has been collecting such commissions since 1910, that all the plaintiffs have known about it, and none has seriously objected to it. As to the other he found that "The trustee's inadvertence . . . has no tendency to prove that he is deliberately selfish, and unfair to the plaintiffs in administering the trust."

As to the general charge that the trustee has become unsuitable because he has aroused the permanent and justifiable distrust and hostility of the income beneficiaries, the evidence shows that the plaintiff George Walker entertained some hostility toward the defendant as far back as 1904 over matters which are not subjects of this suit and as to which it is not shown that the defendant was in any way to blame. The judge finds that the defendant's relations toward George Walker "have not been as cordial as he [the defendant] has been willing they should be, but there is no hostility on his part toward George Walker. The defendant's relations with his sisters have been friendly except as affected

temporarily by the bringing of this suit. There is no mutual hostility between the plaintiffs and the defendant."

On this question of removal the judge made these further findings: "The defendant has administered the trust fairly, faithfully, carefully and honestly, and has exercised the discretion and displayed the prudence which a prudent business man would use in managing his own affairs, except in the single instance of employing an agent in February, 1933, under all the conditions and circumstances then existing and likely to continue. That was an honest error of judgment and can do no harm to the trust estate or to the plaintiffs. His other errors, which have been few, have been errors of accounting and can easily be remedied. There is no ground whatever for removing the defendant from his trust. It would be detrimental to the trust to remove him."

The facts established do not call for the removal of the trustee. There is no fraud or dishonesty. There is no incapacity or negligence which might indicate future peril to the trust property. There is a long record of faithful and efficient administration. The trustee has acquired a valuable experience of the renting capabilities of the building. At most there may have been a few errors of judgment or of law as to matters about which honest and intelligent opinions might differ, and these would be capable of easy correction and after a final decision of the court would not be likely to be repeated. In such cases courts do not commonly remove the trustee, especially when he was selected by the original settlor and not by the court itself. *Murdoch* v. *Elliot*, 77 Conn. 247, 256. *Crabb* v. *Young*, 92 N. Y. 56, 66 *et seq.* *Wylie* v. *Bushnell*, 277 Ill. 484, 505. *Waller* v. *Hosford*, 152 Iowa, 176. *Preston* v. *Wilcox*, 38 Mich. 578, 582. *Wilson* v. *Smoot*, 186 Ky. 194, 199. *Massey* v. *Stout*, 4 Del. Ch. 274. *Smith* v. *Heyward*, 115 S. C. 145, 164. *Nickels* v. *Philips*, 18 Fla. 732. Am. Law Inst. Restatement: Trusts, § 107 (a) comment f. A petition for removal of a trustee is addressed to the reasonable discretion of the court. *Scott* v. *Rand*, 118 Mass. 215, 217. *Billings* v. *Billings*, 110 Mass. 225, 228. Many cases can be found in which it is said that hostility to the trustee on the part

of beneficiaries is in itself a sufficient ground for removal. Such statements should be read in connection with the facts of the cases in which they are made. We do not doubt that such hostility may sometimes, in and of itself, be a sufficient cause for removal, although the trustee is without fault. *May* v. *May*, 167 U. S. 310, 320. But the existence of hostile feeling on the part of beneficiaries does not relieve the court of its duty to exercise its best judgment under all the circumstances. *Wilson* v. *Wilson*, 145 Mass. 490, 492. There is no rule that the trustee must be removed when the hostile feeling does not interfere with the proper administration of the trust. *Garvey* v. *Garvey*, 150 Mass. 185. Am. Law Inst. Restatement: Trusts, § 107 (a), comment c. See *Rogers* v. *Rogers*, 258 Mass. 228. There are many trusts in which no trustee could fully perform his duty without incurring the hostility of some of the beneficiaries. This case bears little resemblance to *Comstock* v. *Bowles*, 295 Mass. 250.

2. The plaintiffs further contend that the defendant should be ordered to pay over to them an accumulation of undistributed income which at the end of the latest accounting period with which the evidence deals amounted to nearly $32,000, and which has been since increased by the trustee having already reimbursed the trust the amount paid as salary to his son George R. Walker, in accordance with the Superior Court's decision on that point. This issue relates only to the distribution under existing conditions of income already received among present income beneficiaries all of whom are parties to the suit. No difficulty arises over the absence of indispensable parties.

The plaintiffs' contention is based upon a very narrow and literal construction of those clauses of the trust deed which require the trustee to pay over the "net income" "annually or oftener if convenient" to the settlor's children, those which refer to the income as vested property of the income beneficiaries, and the provision for making up an account "annually" and determining the net income. The construction urged by the plaintiffs would make it impossible to carry on such a trust as this. If every last cent of income

must be paid over to the income beneficiaries or set aside inviolate for them at each annual accounting there could be nothing left out of which to pay taxes, mortgage interest, repairs immediately necessary by reason of a change of tenants or otherwise, or other urgent expenses which by the terms of the instrument itself are chargeable to and payable out of income alone and which might fall due shortly after the accounting. In fact each instalment of interest on the mortgage amounts to over $15,000. Taxes in recent years have exceeded $45,000 annually. The payroll is about $700 a week. It might be, and probably would be, quite impossible to accumulate such sums in time, if the trustee were obliged to start with nothing at each annual accounting. These considerations are especially pertinent since the effects of the depression have rendered income receipts uncertain and largely dependent upon a few of the more important tenants, and since the property is now operated at a loss. For many years the trustee has carried an income reserve, apparently without objection. It is necessary that he should do so. One or two expressions in the trust deed must not be so construed as to impair or destroy the whole scheme of the trust, when another and more reasonable construction is possible. Withholding a fair income reserve does not interfere with the annual accounting and determination of income required by the instrument, nor does it interfere with the vested right of income beneficiaries to receive ultimately all income not needed to meet proper charges against it. The amount to be withheld is at all times subject to the control of the court. The judge found that it was prudent and reasonable to build up and to carry a reserve of undistributed income to meet expenses "and to be prepared for any emergency which, unless it could be overcome by resort to income, might threaten the stability of the trust," and that in view of the financial situation of the building the conduct of the trustee in withholding income "was not unreasonable or improper, but was wise and prudent. He ought not to be ordered to make any distribution now." These findings must stand. There is nothing herein inconsistent with *Williams* v. *Bradley*, 3

Allen, 270, *Eliott* v. *Sparrell*, 114 Mass. 404, *McElwain* v. *Hildreth*, 203 Mass. 376, or other cases cited by the plaintiffs. Our conclusion is in accord with the general rule as stated in Am. Law Inst. Restatement: Trusts, § 182, comment b.

3. The defendant appeals with respect to that part of the final decree which orders him to charge to the principal of the trust the sum of $6,750 which before the filing of the bill he had paid on account of the principal of the mortgage, but had not allocated as between the principal and income of the trust. It would seem that upon this issue the capital interests in the trust ought to have been adequately represented in the suit, and that such representation is so far indispensable that the court ought not without it to proceed to a final decision adverse to those interests which may affect not merely the payment already made but the entire principal of the mortgage. In *Sears* v. *Hardy*, 120 Mass. 524, at 529, Chief Justice Gray states the general rule that "to a suit against trustees to enforce the execution of a trust, *cestuis que trust*, claiming present interests directly opposed to those of the plaintiff, should be made parties, in order that they may have the opportunity themselves to defend their rights, and not be obliged to rely upon the defence made by the trustees, or to resort to a subsequent suit against the trustees or the plaintiff, or to take the risk of being bound by a decree rendered in their absence." *Cassidy* v. *Shimmin*, 122 Mass. 406. *Jewett* v. *Tucker*, 139 Mass. 566, 577. *First National Bank of Northampton* v. *Crafts*, 145 Mass. 444, 447. *Richmond* v. *Adams National Bank*, 152 Mass. 359, 365. *Evans* v. *Wall*, 159 Mass. 164, 168. *Crowell* v. *Cape Cod Ship Canal Co.* 164 Mass. 235, 237. *Gregory* v. *Merchants' National Bank*, 171 Mass. 67, 69. *Kendall* v. *Fidelity Trust Co.* 230 Mass. 238, 240. *Holian* v. *Holian*, 265 Mass. 563, 566. *Speakman* v. *Tatem*, 18 Stew. (N. J.) 388. Compare *Wickwire Spencer Steel Corp.* v. *United Spring Co.* 247 Mass. 565, 569; *Hallett* v. *Moore*, 282 Mass. 380, 390. Many cases are collected in 65 C. J. pages 899–901, notes 10–25. In this case none of the capital beneficiaries and no one repre-

senting persons unascertained or not in being has been made a party. The fact that the remainders of the grandchildren are not yet vested, but are contingent until the deaths of all of the settlor's children does not seem to us a good reason why the entire remainder interest should go unrepresented in matters concerning the remainder. *Brewster* v. *Brewster*, 4 Sandf. Ch. 22, 30. See G. L. (Ter. Ed.) c. 201, § 34. Compare G. L. (Ter. Ed.) c. 206, § 24. For the reasons stated and without intending to intimate that the ruling charging the mortgage payment to capital was in itself wrong, we think that the third paragraph of the final decree, which deals with this matter, should be omitted.

We have passed only upon questions which have been argued.

As modified, the decree is affirmed without costs of appeal, except that the Superior Court may deal with costs as between solicitor and client, in so far as they may be properly chargeable against income.

*Ordered accordingly.*