JOSEPH V. MASSA *vs.* JUDAH M. STONE.

Suffolk.    March 6, 1963. — May 7, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Trust,* Removal of trustee, Voting trust.   *Res Judicata.   Probate Court,* Plea, Findings by judge, Appeal.   *Equity Pleading and Practice,* Plea, Findings by judge, Appeal.

Upon appeal in a proceeding in equity in a Probate Court from a decree on a plea, without a report of material facts or a report of evidence, the decree imported a finding of every fact necessary to support it.    [72]

A suit in equity in the Superior Court by a beneficiary of a voting trust against the trustee, which was dismissed, did not preclude a subsequent proceeding in equity in a Probate Court by another beneficiary of the trust, a son of the plaintiff in the earlier suit, against the trustee, even if the same relief was sought, where it did not appear that the son controlled the earlier suit or was represented by his father therein, or that that suit was a class proceeding, or that the father controlled or was the real party in interest in the later proceeding, or that there was privity between the father and the son.    [72–73]

Discussion of removal of a trustee of a voting trust of corporate stock.    [74–75]

On the facts, a trustee of a voting trust of all the stock of a small corporation, appointed to protect the interests of a large creditor of the corporation, was properly removed by judicial decree where the trustee's conduct in sundry particulars was so favorable to the creditor as to exceed the proper protection of his interests and to be detrimental to the corporation and to beneficiaries of the trust.    [75–76]

In the absence of an appeal from a decree of a Probate Court appointing a trustee, an appeal from an interlocutory decree denying a so called motion to dismiss the petition for the appointment had no standing and must be dismissed.    [76]

PETITION for removal of the respondent as a trustee, filed in the Probate Court for the county of Suffolk on January 13, 1961.

Certain pleas and a motion to decline jurisdiction were dismissed by decrees of *Mahoney, J.* A decree removing the respondent was entered by *Keville, J.*

PETITION for appointment of a successor trustee filed on January 2, 1962.

A decree denying a "motion to dismiss" the petition and a decree appointing a successor trustee were entered by *Keville, J.*

*Philip J. Woodward (Arthur T. Wasserman & Julius Thannhauser* with him) for the respondent.

*John D. Dwyer* for the petitioner.

*Edward H. Bennett, Jr., & Philip H. Suter,* for the successor trustee, amicus curiae, submitted a brief.

CUTTER, J. This is a petition by Joseph Massa, a beneficiary of a voting trust, to remove Mr. Judah Stone, an attorney, as one of the voting trustees. A probate judge "[d]ismissed after full hearing" a plea to the jurisdiction, a plea in abatement, a plea in bar, and a motion that the court decline jurisdiction. From these decrees Mr. Stone appealed. Mr. Stone then filed an answer. A decree was entered removing Mr. Stone as voting trustee. Mr. Stone appealed from this decree and also (with a cotrustee) appealed from a decree denying his motion to dismiss a petition for the appointment of a successor trustee. No appeal was taken from a decree appointing a successor trustee. The evidence at the hearing of the removal petition on the merits is reported. Reports of material facts were filed with respect to the decrees removing Mr. Stone as trustee and denying the motion to dismiss the petition for the appointment of a new trustee. The facts are stated principally on the basis of these reports.[1]

In 1937, Joseph Massa's father, Raimond Massa, started to make silver picture frames and small silver items. One Brown and Raimond Massa's two sons joined the business,

---

[1] Mr. Stone's brief states that the "case is not one in which the credibility of witnesses is an important consideration. The basic facts are substantially undisputed." Examination of the evidence convinces us that the probate judge's subsidiary findings were justified by the evidence and were not plainly wrong.

which was incorporated as Raimond, Inc. Brown told Raimond Massa that one Dewey Stone (whose niece had married Mr. Judah Stone) would make much needed loans to Raimond, Inc. without interest. Two such loans were repaid.

In 1955, Dewey Stone, through Brown, agreed to make an additional loan which Raimond Massa understood was to be without interest. The loan was on the condition that Mr. Judah Stone be brought into the business and given one third of the stock. This was done and Mr. Stone became treasurer, clerk, and a director of Raimond, Inc. In 1956, one Leonard Florence was brought into the business at Dewey Stone's direction and was given twenty-five shares of common stock.

In June of 1956, Brown and Raimond Massa each held twenty shares, Louis and Joseph Massa (Raimond's two sons) each held five shares, and Mr. Judah Stone and Florence each held twenty-five shares. All of this stock was put in a voting trust of which Raimond Massa, Mr. Judah Stone, and Florence were the trustees. This voting trust provided, among other things, that " [a]ll questions . . . shall be determined by a decision of a majority of" the voting trustees and "shall include the vote of . . . Judah M. Stone in every instance in order to be valid."[2]

Mr. Judah Stone and Florence conducted the financial and sales end of the business. The Massas worked in the plant until April 9, 1957. On that day Dewey Stone sent for the three Massas and told them "that he was going to call his loans to" Raimond, Inc. These loans then amounted to over $80,000. He "had acquired . . . Brown's stock . . . [so] that he . . . owned seventy per cent of the stock." He "demanded that the Massas arrange to pay . . . [Raimond, Inc.'s] debt . . . or surrender their stock . . . . [I]f he was paid he would surrender

---

[2] The voting trust also provided that vacancies in the trustees occurring by reason of the resignation of a trustee should "be filled by the appointment of a successor by the remaining voting trustees" and that a vacancy occurring by the death of a trustee should be filled by appointment "by the estate of the deceased trustee."

his stock to them for $1." Raimond Massa claimed that there was sufficient silver "inventory to pay the loan; and the Massas declined to surrender their stock." Dewey Stone then told them that, to save payment of their salaries, they were "off the payroll." From then on "the Massas were effectively locked out of the business."

By April, 1960, sales by Raimond, Inc. had risen from about $69,000 in 1955 to about $408,000. Business was improving. The balance sheet at April 30, 1960, showed an operating profit of nearly $36,000 for the first three quarters of the then current fiscal year. Dewey Stone. proposed by a letter of April 16, 1960, to buy the corporate assets by assuming and paying the corporate liabilities which then exceeded the assets. Mr. Judah Stone and Florence voted to accept the proposal.[3] Raimond Massa voted against it. The vote was not carried out because of a then outstanding injunction in a suit in the Superior Court brought by Raimond Massa against Mr. Judah Stone.

On July 26, 1960, at a special meeting of the directors (at which Raimond Massa was not present), "it was voted to pay Dewey Stone a sum equal to 6% per annum on all the money he had . . . [lent to] the corporation . . . and also to compensate him for the use of his collateral and for his guarantee of the credit of the corporation and for his services as financial adviser. . . . As a result of the . . . indebtedness [thus] incurred . . . the profit for the first three quarters was transformed into a deficit of some $23,000.00 for the fiscal year which ended July 31, 1960."

At a meeting of stockholders called for December 29, 1960, and postponed to January 11, 1961 (when Mr. Judah Stone and Florence were present), a somewhat different

---

[3] Dewey Stone claimed that the corporation then (a) owed him $75,490.75, plus accrued interest; (b) owed Mr. Judah Stone $75,000, plus accrued interest, obtained on Dewey Stone's personal guaranty secured by pledge of his property; and (c) owed Malden Trust Company $36,500, plus accrued interest, also obtained by Dewey Stone's guaranty and the pledge of his property. The proposal offered the corporation an alternative by which the corporation would pay the amounts owed by it to the Stones and obtain the release of Dewey Stone's property and guaranty. Beginning in 1956, Dewey Stone had guaranteed loans by Malden Trust Company to Mr. Judah Stone, who then .lent the borrowed funds to Raimond, Inc. at the rate of interest charged him by the bank.

proposal by Dewey Stone was considered.[4]  No notice of this new proposal was given to the Massas.  Mr. Judah Stone and Florence, "a majority of the voting trustees . . . voted to accept the new proposal.  The assets were . . . transferred to a [new] corporation organized by Dewey Stone," who is its sole stockholder.  Florence and Mr. Judah Stone are officers and directors of this corporation.

In January, 1958, Mr. Judah Stone at Dewey Stone's direction opened a corporate checking account in a Brockton bank and certified (on a printed form apparently furnished by the bank) that the directors had authorized this action and that Dewey Stone's secretary, Mrs. Chapin, had been elected assistant treasurer of the corporation and authorized to draw checks on the account.  No formal meeting for such action had then been held although the action had been informally discussed by Mr. Stone and Florence and was later ratified by them.  No notice of the existence of the account was given to the Massas.  Mrs. Chapin at Dewey Stone's direction deposited in this account more than $100,000.

The funds deposited in this account were supplied by Dewey Stone and he received demand notes of the corporation signed by Mr. Judah Stone, its treasurer, for these amounts.  "The funds so deposited were used by Dewey Stone to speculate in common stocks" as he saw fit.[5]  The securities purchased were held by Dewey Stone "in street form.  In several instances . . . he [later] had the securities transferred to himself [at cost]; and . . . [Mrs.] Chapin credited the corporation with the cost price against the money . . . [lent] by him."  These "speculations netted the corporation some $7,000."  The judge on the evidence was unable to find "[w]hat Dewey Stone . . . profited or lost from these transactions."

---

[4] By this Dewey Stone undertook to purchase the corporate assets for the greater of (a) the liabilities shown on the balance sheet of April 30, 1960, excluding accrued interest and management expense payable to him and accrued salary payable to Florence, and (b) the book value of the assets adjusted to reflect changes due to regular business operations after April 30.

[5] This was arranged, so Mr. Judah Stone testified, "on the basis that all the profits . . . would be given to the corporation . . . and that he [Dewey Stone] would hold the corporation harmless from any loss."

The judge concluded that ''early in 1957 it was Dewey Stone's intention to force the Massas from the corporation . . . [but] that he did not . . . intend to force the liquidation of the corporation by calling his loans; [and] that at least as early as February 1960 it was his purpose to acquire the assets and transfer them to a business'' of which he, Florence, and Mr. Judah Stone would be the principal beneficiaries. ''In fulfilling this purpose he received the complete coöperation of [Mr.] Judah Stone who . . . was Dewey Stone's willing creature . . . . At no time did [Mr.] Judah Stone attempt to exercise independent judgment or take the responsible action required of him as an officer, director and voting trustee.''

1. Mr. Judah Stone's plea in bar presents the issue whether this petition is barred by the dismissal of a prior suit against him brought by Raimond Massa in the Superior Court. The allegations of the plea[6] are largely conclusory. Cf. *Willett* v. *Webster,* 337 Mass. 98, 101–103. The record shows merely that the plea was ''[d]ismissed after full hearing.'' See *Moran* v. *Manning,* 306 Mass. 404, 408; *Lyon* v. *Sharpe,* 317 Mass. 283, 284; *O'Donoghue* v. *Manning,* 331 Mass. 23, 24. There is no report of material facts or of evidence and, if there was a hearing on the truth of the facts alleged in the plea, the decree imports the finding of every fact essential to its proper entry. See *Bodman* v. *Martha's Vineyard Natl. Bank,* 330 Mass. 125, 126; *Zottu* v. *Electronic Heating Corp.* 334 Mass. 442, 446. See also *Wasserman* v. *Locatelli,* 343 Mass. 82, 83. Even if the hearing was only upon the legal sufficiency of the plea (see *Palmer* v. *Motley,* 323 Mass. 129, 136–137), the facts (as opposed to conclusory matter, see fn. 6, *supra*) alleged in the

---

[6] The principal allegations are that ''a prior suit was commenced in the . . . Superior Court . . . [on] April 6, 1960 . . . that the cause of action alleged and the relief sought . . . is the same . . . that the prior suit was . . . against . . . [Mr.] Stone . . . [by] Raimond Massa . . . father of'' the present petitioner, ''and the real party in interest in whose behalf the present proceeding is brought; that in truth and in fact, the present proceeding is by the same party in interest, against the same defendant, and for the same cause of action and relief as said prior suit . . . that . . . all issues raised by the present petition have been or could have been litigated . . . in . . . [the] prior suit,'' and that a final decree dismissing the prior bill was entered on December 20, 1960.

plea would not establish that as matter of law the prior proceeding precluded the present petition. The plea shows that the prior bill was by Raimond Massa whereas this petition is by Joseph Massa, who in his petition "represents that he is a beneficiary of" the voting trust, as he undoubtedly was by reason of his ownership of five shares or voting trust certificates. See Restatement: Judgments, § 80, comment 1. See also *Turner* v. *Morson,* 316 Mass. 678, 688–689, and Scott, Trusts (2d ed.) § 216.2, stating the principle that consent of one beneficiary of a trust to a breach of trust does not bar other beneficiaries from seeking relief against the trustee. It is not averred in the plea that Joseph Massa had control of the suit brought by his father or that his father purported to represent him or that Raimond Massa controls this proceeding. See *Pioneer Insulation & Modernizing Corp.* v. *Lynn,* 331 Mass. 560, 563–564; Restatement: Judgments, § 84. See also *McCarthy* v. *Daggett,* 344 Mass. 577, 580. Cf. *Elliott* v. *Hayden,* 104 Mass. 180, 182; *Weld* v. *Clarke,* 209 Mass. 9, 12. Cf. also *Giedrewicz* v. *Donovan,* 277 Mass. 563, 565–569; *Detore* v. *McKinstery,* 322 Mass. 190, 191–192. The plea does not aver that the Superior Court proceeding was or purported to be a class proceeding (see Restatement: Judgments, § 86) or that Joseph Massa was made a party to it. No error appears in the entry of the decree upon the plea in bar.

2. The plea to the jurisdiction, based upon the earlier Superior Court suit, also was "[d]ismissed after full hearing." The pendency of that suit did not give the Superior Court exclusive jurisdiction of proceedings to remove Mr. Judah Stone as trustee, where the parties to the prior suit were not established to have been the same and where no facts were set forth sufficient to show that the plaintiff in that suit was in privity with the present petitioner. See *Old Colony Trust Co.* v. *Wood,* 321 Mass. 519, 524–526. See also *White* v. *White,* 322 Mass. 461, 465–466 (issues not same). Cf. *Old Colony Trust Co.* v. *Segal,* 280 Mass. 212, 214–215; *MacDonald* v. *Gough,* 327 Mass. 739, 743.

3. Mr. Stone's plea in abatement asserts that Joseph Massa "is under the domination and control of . . . Raimond Massa in such manner as to render the present proceeding in substance . . . one brought by Raimond Massa" and that the present petition is brought to harass Mr. Stone. What has been said about the absence of facts showing identity of parties and privity between Raimond Massa and Joseph Massa applies also to the plea in abatement. Cf. *Stahler* v. *Sevinor,* 324 Mass. 18, 23; *Pappas* v. *Maxwell,* 337 Mass. 552, 559.

Mr. Stone has not argued his appeal from the denial of his motion to decline jurisdiction.

4. We assume that the protection of creditors is a legitimate reason for the creation of a voting trust to ensure unity and continuity in corporate management policy while an indebtedness exists and for other business reasons. We assume also that a voting trustee, appointed to conserve the interests of a creditor, may cast his vote as a trustee of the shares in a manner tending to guard those interests fairly, so long as he acts reasonably and consistently with the purposes of the trust and without improper furtherance of the trustee's or the creditor's interests to the detriment of those of the corporation and the beneficiaries. See *Bullivant* v. *First Natl. Bank,* 246 Mass. 324, 333–334. See also *Loughery* v. *Bright,* 267 Mass. 584, 587–589; *Brown* v. *McLanahan,* 148 F. 2d 703, 708–709 (4th Cir.).[7] Cf. *Wilson* v. *Jennings,* 344 Mass. 608, 618–619. A voting trustee, like other trustees, is subject to removal for adequate cause by a court of equity having jurisdiction. See *Barbour* v. *Weld,* 201 Mass. 513, 520–522; *Lippard* v. *Parish,* 22 Del. Ch. 25, 29–31; *Smith* v. *Biggs Boiler Works Co.* 33 Del. Ch. 183, 193–195. Annotation, 34 A. L. R. 2d 1136. Cf. *Holmes* v. *Sharretts,* 228 Md. 358, 370–374; *Matter of Knollwood Real*

---

[7] See *Mackin* v. *Nicollet Hotel, Inc.* 25 F. 2d 783, 786–788 (8th Cir.), cert. den. 278 U. S. 618; *Hearst* v. *American Newspapers, Inc.* 51 F. Supp. 171, 177–180 (D. Del.); *Thompson-Starrett Co.* v. *E. B. Ellis Granite Co.* 86 Vt. 282, 289–290; *Clark* v. *Foster,* 98 Wash. 241, 251–252; *Gottschalk* v. *Avalon Realty Co.* 249 Wis. 78, 84–86; Bogert, Trusts and Trustees, §§ 251, 524, 527; Fletcher, Cyc. Corporations, § 2081.

*Estate Co.* 17 Misc. 2d (N. Y. Supr. Ct.) 159, 160–161. In a business trust or a voting trust (where "rules of policy applicable to the business situation enter in," see Scott, Trusts [2d ed.] § 59, p. 514), courts properly may be slower to exercise the somewhat drastic power to remove a trustee chosen by the parties to effectuate their business purposes, than in the case of ordinary private trusts, for much the same reasons as those which make a court "less ready to remove a trustee who was named by the settlor" than one selected by other methods. See *Shirk* v. *Walker,* 298 Mass. 251, 259; Scott, Trusts (2d ed.) § 107.1. Nevertheless, in appropriate cases the power of removal may be exercised, as in other trusts, because of a risk of serious harm to the beneficiaries, possible conflict of interest, improper disregard of the interests of the beneficiaries or of the corporation, serious breaches of trust, and comparable circumstances. See *Wilson* v. *Wilson,* 145 Mass. 490, 493–494; *Perry* v. *Perry,* 339 Mass. 470, 474–479; Restatement 2d: Trusts, § 107. See also *Quincy Trust Co.* v. *Taylor,* 317 Mass. 195, 196–197; *Wesson* v. *Crain,* 165 F. 2d 6, 9 (8th Cir.). Cf. *Shirk* v. *Walker,* 298 Mass. 251, 253–260.

Upon the facts, already summarized, the removal of Mr. Stone as trustee was justified. Doubtless, as is indicated by the provision of the voting trust making Mr. Stone's vote essential to valid action by the voting trustees, he was appointed to see that Raimond, Inc. was conducted in a manner consistent with Dewey Stone's interests as its creditor. The probate judge, however, could have concluded that Mr. Stone's actions, in the aggregate, went beyond proper protection of Dewey Stone as a creditor (a) by facilitating the ouster of the Massas from the business, (b) by assisting Dewey Stone in his somewhat unusual speculative investment arrangement in the name of the corporation, an arrangement not formally authorized in advance, (c) by participation in the directors' votes on July 26, 1960, to pay interest to Dewey Stone for loans not shown originally to have required interest payments and to compensate him as a financial adviser, and (d) by his votes

for the transfer of assets to the new corporation by which Mr. Stone was to be employed. The probate judge could reasonably have concluded that Mr. Stone's course of management of the corporation had been so favorable to the interests of Dewey Stone and sufficiently detrimental to those of the Massas as to require Mr. Stone's removal, especially at a time when significant assets of the corporation might be claims against Mr. Stone, Dewey Stone, and Florence and against the transferee corporation.

5. The appeal from the interlocutory decree denying the motion to dismiss (essentially a plea or demurrer on the grounds stated in the motion, see *Trustees of Dartmouth College* v. *Quincy,* 331 Mass. 219, 225) the petition for the appointment of a new trustee is without merit in view of the failure to appeal from the decree, in effect a final decree, appointing the new trustee. See *School Comm. of Winchendon* v. *Selectmen of Winchendon,* 300 Mass. 266; *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 187–188. See also *Fusaro* v. *Murray,* 300 Mass. 229, 231; *Elbaum* v. *Sullivan,* 344 Mass. 662, 665.

6. The decrees are affirmed with the exception of the decree denying the motion to dismiss the petition for the appointment of a new trustee. The appeal from that decree is dismissed. The petitioner is to have costs of this appeal to be paid by Mr. Judah Stone.

*So ordered.*